FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

OCT 18 2017

MATTHEW J. DYKMAN
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| vs. | ) | CRIMINAL NO. 15-cr-3762-JCH |
| **NAEL ALI**, | ) | |
| Defendant. | ) | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(C), Fed. R. Crim. P., the parties notify the Court of the following agreement between the United States Attorney for the District of New Mexico, the Defendant, Nael Ali, and the Defendant's counsel, J.D. Herrera:

## REPRESENTATION BY COUNSEL

1. The Defendant understands the Defendant's right to be represented by an attorney and is so represented. The Defendant has thoroughly reviewed all aspects of this case with the Defendant's attorney and is fully satisfied with that attorney's legal representation.

## RIGHTS OF THE DEFENDANT

2. The Defendant further understands the Defendant's rights:

    a. to be prosecuted by indictment;

    b. to plead not guilty, or having already so pleaded, to persist in that plea;

    c. to have a trial by jury; and

    d. at a trial:

        1) to confront and cross-examine adverse witnesses,

        2) to be protected from compelled self-incrimination,

3)   to testify and present evidence on the Defendant's own behalf, and

4)   to compel the attendance of witnesses for the defense.

## WAIVER OF RIGHTS AND PLEA OF GUILTY

3.   The Defendant agrees to waive these rights and to plead guilty to a two-count Information, charging violations of 18 U.S.C. § 1159, that being violation of the Indian Arts and Crafts Act.

## SENTENCING

4.   The Defendant understands that the maximum penalty provided by law for these offenses is:

   a.   imprisonment for a period of not more than 5 years;

   b.   a fine not to exceed the greater of $250,000 or twice the pecuniary gain to the Defendant or pecuniary loss to the victim;

   c.   a term of supervised release of not more than one year to follow any term of imprisonment. (If the Defendant serves a term of imprisonment, is then released on supervised release, and violates the conditions of supervised release, the Defendant's supervised release could be revoked — even on the last day of the term — and the Defendant could then be returned to another period of incarceration and a new term of supervised release.);

   d.   a mandatory special penalty assessment of $100.00; and

   e.   restitution as may be ordered by the Court.

5.   The parties recognize that the federal sentencing guidelines are advisory, and that the Court is required to consider them in determining the sentence it imposes.

6. The parties are aware that the Court will decide whether to accept or reject this plea agreement. The Court may defer its decision as to acceptance or rejection until there has been an opportunity to consider the presentence report. Pursuant to Federal Rule of Criminal Procedure 11(c)(5), if the Court rejects this plea agreement, the defendant shall have the right to withdraw the defendant's plea of guilty.

7. Regardless of any other provision in this agreement, the United States reserves the right to provide to the United States Pretrial Services and Probation Office and to the Court any information the United States believes may be helpful to the Court, including but not limited to information about the recommendations contained in this agreement and any relevant conduct under U.S.S.G. § 1B1.3.

## ELEMENTS OF THE OFFENSE

8. If this matter proceeded to trial, the Defendant understands that the United States would be required to prove, beyond a reasonable doubt, the following elements for violations of the charges listed below:

Counts 1 and 2: 18 U.S.C. §1159:

| | |
|---|---|
| *First*: | the defendant displayed, offered for sale, or sold any good for more than $1,000; |
| *Second*: | the defendant did so in a manner that suggested that the good was Indian produced, an Indian product, or the product of a particular Indian or Indian tribe; |
| *Third*: | the claimed Indian is a member of an Indian tribe or a certified artist thereof, or the claimed Indian tribe is federally or state recognized; |
| *Fourth*: | the good was not Indian produced, an Indian product, or the product of a particular Indian or Indian tribe; and |

*Fifth*:  the defendant acted with knowledge that the good was not Indian produced, an Indian product, or the product of a particular Indian or Indian tribe.

## DEFENDANT'S ADMISSION OF FACTS

9. By my signature on this plea agreement, I am acknowledging that I am pleading guilty because I am, in fact, guilty of the offense(s) to which I am pleading guilty. I recognize and accept responsibility for my criminal conduct. Moreover, in pleading guilty, I acknowledge that if I chose to go to trial instead of entering this plea, the United States could prove facts sufficient to establish my guilt of the offense(s) to which I am pleading guilty beyond a reasonable doubt, including any facts alleged in the information that increase the statutory minimum or maximum penalties. I specifically admit the following facts related to the charges against me, and declare under penalty of perjury that all of these facts are true and correct:

10. On February 26, 2014, I operated a store in old town Albuquerque, New Mexico named, "Gallery 8," from which I sold Native American-style jewelry. I personally stocked the store with the jewelry and, at times, sold jewelry from the store. I knew that many of the pieces of Native American-style jewelry I displayed for sale were not made by Indians but rather made by laborers in the Philippines. Nonetheless, I mixed the Philippine-made jewelry with Indian-made jewelry, and I never labeled the Philippine-made jewelry with its country of origin.

11. On February 26, 2014, an employee, who was operating at my direction, sold the counterfeit Native American-style jewelry to a person I later learned was an undercover agent working for the United States Fish and Wildlife Service (the "UC"). Following my training, direction and example, my employee displayed and sold some of that counterfeit jewelry to the UC in a manner that suggested it was an Indian product, or the product of a particular Indian

4

tribe, resident in the United States. Specifically, in exchange for $1,115 U.S. currency, my employees sold the UC five (5) rings stamped with "CK" initials, one (1) ring stamped with a yucca symbol, one (1) ring stamped with "NB" initials, one (1) ring stamped with "OY" initials, three (3) rings stamped with a raincloud symbol, and one (1) ring stamped with a feather symbol. My employees represented the jewelry as Navajo made. The jewelry my employees sold to the UC was Native-American in style, but I knew it was actually made in the Philippines and not by Indians. Nonethelesss, I intentionally stocked that jewelry in a manner falsely suggesting it was Indian made, provided lists for the employees to reference the symbols and initials to falsely suggest the jewelry was Indian made, and trained the employees to tell customers the jewelry was Native American-made and to reference the fraudulent list that I created. I understand that both the Zuni and Navajo tribes are federally recognized Indian tribes and are resident within the United States.

12. On October 8, 2015, and continuing to October 28, 2015, I operated two stores in old town Albuquerque, New Mexico: Gallery 8 and Galleria Azul. On those dates, while at my stores, I personally displayed and offered Philippine-made, Native American-style jewelry for sale as Indian made. I knew this jewelry was made in the Philippines and not by Indians because I purchased some of the jewelry through Mohammad Manasra, whom I knew purchased it from Sterling Islands, Inc., which I understood was connected to a Philippine-based factory. I also purchased jewelry from the Aysheh brothers, whom I knew were also operating a Philippine-based factory. I intentionally mixed the Philippine-made jewelry with genuine Indian-made jewelry. I ensured that none of the Philippine-made jewelry was marked with its country of origin. I intentionally and personally represented that all of my Native-American style jewelry

was real Indian-made jewelry to another UC. The manner of sale suggested that the jewelry was made by Indians, resident in the United States and members of a federally recognized Indian tribe, such as the Navajo and Zuni tribes. The total amount of Philippine jewelry that I offered and displayed as Indian-made far exceeded $1,000 in retail and wholesale price.

13. By signing this agreement, the Defendant admits there is a factual basis for each element of the crime(s) to which the Defendant is pleading guilty. The Defendant agrees that the Court may rely on any of these facts, as well as facts in the presentence report, to determine the Defendant's sentence, including, but not limited to, the advisory guideline offense level.

## RECOMMENDATIONS

14. The United States and the Defendant recommend as follows:

   a. The Defendant and the United States have made an AGREEMENT pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that a specific sentence between 0 months and not more than 18 months imprisonment is the appropriate disposition in this case. This agreement takes into account the Defendant's acceptance of responsibility, with no further reduction to occur. The remaining components of the Defendant's sentence, including but not limited to any fine or restitution and the length and conditions of supervised release, shall be imposed by the Court after the presentation of evidence and/or argument by the parties.

   b. If the Court accepts the plea agreement, it must inform the Defendant that the agreed upon disposition will be included in the judgment, and the

Court is bound by the terms of the plea agreement once the Court accepts the plea agreement.

## DEFENDANT'S ADDITIONAL AGREEMENT

15. The Defendant understands the Defendant's obligation to provide the United States Pretrial Services and Probation Office with truthful, accurate, and complete information. The Defendant represents that the Defendant has complied with and will continue to comply with this obligation.

16. Except under circumstances where the Court, acting on its own, rejects this plea agreement, the Defendant agrees that, upon the Defendant's signing of this plea agreement, the facts that the Defendant has admitted under this plea agreement as set forth above, as well as any facts to which the Defendant admits in open court at the Defendant's plea hearing, shall be admissible against the Defendant under Federal Rule of Evidence 801(d)(2)(A) in any subsequent proceeding, including a criminal trial, and the Defendant expressly waives the Defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to the facts the Defendant admits in conjunction with this plea agreement.

17. The Defendant recognizes that this plea agreement has already conferred a benefit on the Defendant. Consequently, in return for the benefit conferred on the Defendant by entering into this agreement, the Defendant agrees not to seek a downward departure or variance from a specific sentence between 0 months and not more than 18 months imprisonment as agreed to by the parties pursuant to Rule 11(c)(1)(C) of the Federal rules of Criminal Procedure. If the Defendant, in violation of this paragraph, should nevertheless seek a downward departure or variance, including a departure or variance from the guideline Criminal History Category, the

United States shall have the right to treat this plea agreement as null and void and to proceed to trial on all charges before the Court.

## RESTITUTION

18. The parties agree that, as part of the Defendant's sentence, the Court will enter an order of restitution pursuant to the Mandatory Victim's Restitution Act, 18 U.S.C. § 3663A. The Defendant understands that any payment schedule the Court may impose is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The United States Probation Office, or, after the Defendant completes any term of supervised release the Court imposes, the United States Attorney's Office for the District of New Mexico, may revise the monthly payment amount depending on the Defendant's financial circumstances. No later than July 1st of each year after sentencing, until restitution is paid in full, the Defendant shall provide the Asset Recovery Unit, U.S. Attorney's Office, P.O. Box 607, Albuquerque, NM 87103, (1) a completed and signed financial statement provided to the Defendant by the United States Attorney's Office and/or the United States Probation Office, and (2) a copy of the Defendant's most recent tax returns.

## FORFEITURE

19. The Defendant agrees to forfeit, and hereby forfeits, whatever interest the Defendant may have in any asset derived from or used in the commission of the offense(s) in this case. The Defendant agrees to cooperate fully in helping the United States (a) to locate and identify any such assets and (b) to the extent possible, to obtain possession and/or ownership of all or part of any such assets. The Defendant further agrees to cooperate fully in helping the United States locate, identify, and obtain possession and/or ownership of any other assets about

8

which the Defendant may have knowledge that were derived from or used in the commission of offenses committed by other persons.

*Money Judgment*

20. The Defendant agrees to the imposition of a money judgment against the Defendant in the amount of $3,840.38, representing a portion of the net profit the Defendant derived from the offense charged in the Information, this amount being due at the time of the Defendant's sentencing.

*Personal Property*

21. The Defendant voluntarily and immediately agrees to forfeit to the United States all of the Defendant's right, title, and interest in 5,208 pieces of Native-American style jewelry that were seized from the Defendant and from Defendant's co-defendant, except as follows: At the conclusion of sentencing, the United States agrees to return to the Defendant 24 pieces of jewelry determined to be Indian-style, non-Indian-made, non-imported jewelry that was not displayed for sale; 149 pieces of jewelry determined to be genuine Indian-made jewelry; and 137 pieces of jewelry determined to be non-Indian-style jewelry that were not offered as Indian made.

22. The Defendant agrees to fully assist the United States in the forfeiture of the above-described property and to take whatever steps are necessary to pass clear title to the United States, including but not limited to execution of any documents necessary to transfer the Defendant's interest in the above-described property to the United States.

23. The Defendant agrees to waive the right to notice of any forfeiture proceeding involving the above-described property.

24. The Defendant knowingly and voluntarily waives the right to a jury trial on the forfeiture of the above-described property. The Defendant knowingly and voluntarily waives all constitutional, legal, and equitable defenses to the forfeiture of said property in any proceeding. The Defendant agrees to waive any jeopardy defense or claim of double jeopardy, whether constitutional or statutory, and agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine, to the forfeiture of said property by the United States or any State or its subdivisions.

## IMMIGRATION REMOVAL AND OTHER IMMIGRATION CONSEQUENCES

25. The Defendant recognizes that pleading guilty may have consequences with respect to the Defendant's immigration status if the Defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which the Defendant is pleading guilty. Indeed, because the Defendant is pleading guilty to a crime of moral turpitude, removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the district court, can predict to a certainty the effect of the Defendant's conviction on the Defendant's immigration status. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any immigration consequences that the Defendant's plea may entail, even if the consequence is the Defendant's automatic removal from the United States.

## WAIVER OF APPEAL RIGHTS

26. The Defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford a defendant the right to appeal a conviction and the sentence imposed. Acknowledging that, the

Defendant knowingly waives the right to appeal the Defendant's conviction(s) and any sentence, including any fine, imposed in conformity with this Fed. R. Crim. P. 11(c)(1)(C) plea agreement, as well as any order of restitution entered by the Court. In addition, the Defendant agrees to waive any collateral attack to the Defendant's conviction(s) and any sentence, including any fine, pursuant to 28 U.S.C. §§ 2241 or 2255, or any other extraordinary writ, except on the issue of defense counsel's ineffective assistance.

## GOVERNMENT'S ADDITIONAL AGREEMENT

27. Provided that the Defendant fulfills the Defendant's obligations as set out above, the United States agrees that:

   a. The United States will not seek any restitution or fines beyond the money judgment of $3,840.38 and the Court's special penalty assessment. Nothing in this agreement prohibits victims from requesting, or the Court from ordering, restitution or fines to account for victim loss.

   b. Following sentencing, the United States will move to dismiss, as to Defendant only, the two pending indictments filed against the Defendant in *United States v. Ali et al.*, 15-cr-3762-JCH (D.N.M. 2015), and *United States v. Aysheh et al.*, 17-cr-370-JCH (D.N.M. 2017).

   c. The United States will not bring additional criminal charges against the Defendant arising out of the facts forming the basis of the present information.

28. This agreement is limited to the United States Attorney's Office for the District of New Mexico and does not bind any other federal, state, or local agencies or prosecuting authorities.

## VOLUNTARY PLEA

29. The Defendant agrees and represents that this plea of guilty is freely and voluntarily made and is not the result of force, threats, or promises (other than the promises set forth in this agreement and any addenda). The Defendant also represents that the Defendant is pleading guilty because the Defendant is in fact guilty.

## VIOLATION OF PLEA AGREEMENT

30. The Defendant agrees that if the Defendant violates any provision of this agreement, the United States may declare this agreement null and void, and the Defendant will be subject to prosecution for any criminal violation, including but not limited to any crime(s) or offense(s) contained in or related to the charges in this case, as well as perjury, false statement, obstruction of justice, and any other crime committed by the Defendant during this prosecution.

## SPECIAL ASSESSMENT

31. At the time of sentencing, the Defendant will tender to the United States District Court, District of New Mexico, 333 Lomas Blvd. NW, Suite 270, Albuquerque, New Mexico 87102, a money order or certified check payable to the order of the **United States District Court** in the amount of $200 in payment of the special penalty assessment described above.

## ENTIRETY OF AGREEMENT

32. This document and any addenda are a complete statement of the agreement in this case and may not be altered unless done so in writing and signed by all parties. This agreement is effective upon signature by the Defendant and an Assistant United States Attorney.

AGREED TO AND SIGNED this 18th day of October, 2017.

JAMES D. TIERNEY
Acting United States Attorney

_____
Kristopher N. Houghton and
Sean P. Sullivan
Assistant United States Attorneys
Post Office Box 607
Albuquerque, New Mexico 87102
(505) 346-7274

I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of my client's rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. In addition, I have explained to my client the elements to each offense to which she/he is pleading guilty. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

_____
J.D. Herrera
Attorney for the Defendant

I have carefully discussed every part of this agreement with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.

_____
Nael Ali
Defendant

13