IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

           Plaintiff,

vs.                                                          NO. **15CR3762 JH**

NAEL ALI,

           Defendant.

## FORMAL OBJECTIONS TO PRESENTENCE REPORT

    Nael Ali, by and through his counsel, Jerry Daniel Herrera, hereby provides these formal objections to the presentence report:

    <u>Objection No.1</u>: P.9, ¶24,  (Also, P. 16 ¶56): Mr. Ali's stores do not "specialize" in the sale of Native American jewelry and pottery. Nor did he ever claim to specialize. Much of their product is Sterling Silver in what he references as southwestern style but not necessarily all product is Native-American. In fact, he carries a line of Euro glass and jewelry. Another store, for example, carries oil and vinegar imports. In fact, the store in Scottsdale, Arizona specifically excluded a Native American theme pursuant to the lease. The use of the word "specialize" is a subjective, conclusory comment without any basis. U.S. Probation, wrongfully attempts to place a burden on Mr. Ali to prove that he doesn't specialize, in essence, to disprove a negative.

    <u>Objection No. 2</u>: P.10, ¶26,  (Also P. 16 ¶56): Again, Mr. Ali denies that he "specializes" in the sale of Native American jewelry. Approximately 50% of his business is the sale of jewelry and no more than about 30% is comprised of Sterling and IJW-imported jewelry. The use of the word "specialize" is a subjective, conclusory comment without any basis. U.S. Probation, wrongfully attempts to place a burden on Mr. Ali to prove that he doesn't specialize, in essence, to disprove a negative.

    <u>Objection No. 3</u>: P.10, ¶28:  Mr. Ali does not recall that he claimed the jewelry was Navajo or that ALL of his product was Navajo made. Reference was often made to Navajo-style or Southwest-style. Further, at the time of the investigation, Mr. Ali states that the referenced 69 items were not necessarily items from Mr. Ali and just as easily could have been purchased elsewhere. For instance, Sterling Island product, as is referenced in the PSR, is widely distributed nationally with the bulk of their product distributed through Al Zuni Trading Company, a national operation with a huge location in Gallup. They have a strong presence at all

the national trade shows.  They also take their merchandise "on the road" that is, they have sales representatives travel to retail operations.  Furthermore, Turquoise Canyon, at the point of purchase, had been advised, as all customers are, that if they were unhappy with the product or were unable to move or sell the product, that it easily could be returned for exchange or refund.  This was on April 9, 2011.  In the four years leading up to Mr. Ali's arrest, Turquoise Canyon never contacted Mr. Ali to request any exchange or refund.  Holding on to the jewelry for over four years is remarkable in this industry.

  Objection No. 4:  4P.12, ¶37:   Mr. Ali disputes the he claimed that ALL jewelry was Native-made.

  Objection No. 5:  P. 12, ¶38: Mr. Ali denies that he was "boasting."  The Oneida Tribe came to him, thirteen years ago when he opened Galleria 8.  He was instrumental in training some of their employees in merchandising and selling and was their contact in the industry.  He served as their guest speaker at the opening of their store in upstate New York.  Again, commentary such as this is subjective, speculative and conclusory without any basis.

  Objection No. 6:  P. 13, ¶41:  Mr. Ali asserts that his dealings with the Oneida Tribe involved the sale of jewelry, but mostly he provided pottery, dream catchers and Kachina's.  Maybe approximately 25% of his sales to Oneida were comprised of jewelry, and of that, it was mostly OP silver from Albuquerque.

  Objection No. 7:  P. 16, ¶56:  Once again, Mr. Ali disputes that his stores "specialized" in the sale of native American jewelry.  The government claims an amount of $190,452.56 as the amount of jewelry sold in this matter."  In fact, Mr. Ali may have purchased this amount in jewelry from two companies, Sterling Island and IJW, however, the majority of IJW product was still in his van at the time of the raid, in an amount approximating $65,000.  The remainder of IJW product was still in the store, probably about $15,000.  The government, at the time of the search, took 2,500 pieces of jewelry from his van and from his store.

  Objection No. 8:  P16, ¶56:   Mr. Ali asserts that his stores are small, the jewelry cases are small and there is a large clientele that are constantly shifting jewelry pieces about as they inspect and try on various rings and jewelry pieces.  The jewelry is moved about quite extensively.

  Objection No. 9:  P. 18, ¶65:  Mr. Ali advises and has a concern that Turquoise Canyon would have had to not sell and would then have had to have "sat" on this product for four years.  With so many vendors selling the same product, it would be difficult to determine if that is the same jewelry. Again, The vendors at Turquoise Canyon were advised that the jewelry that had been purchased was returnable at any time.  During the four years leading up to the investigation, Turquoise Canyon never indicated they were unhappy with the jewelry or that a return had been refused.

Objection No. 10: P. 19, ¶71:  Mr. Ali objects to the ten level increase, given that this is not a loss at all.  The amount referenced, --the $190,000, was jewelry that was purchased but not sold.  It is nothing more than speculation that the jewelry referenced herein would ALL have been marketed as genuine native American jewelry.  Mr. Ali has always asserted that while some of the product was Native-made, much of the product is southwest in style.  In Mr. Ali's stores, there are no signs indicating that this was ALL genuine Native American jewelry.  Many, many customers buy the jewelry simply because they like the style or because it was affordable.  And, further, much if not all the jewelry, had value as Sterling silver.  For instance, if a customer should ask if this is Native American and they misrepresent that it is when it isn't, then that is duplicitous and wrong.  But most of the customers look at jewelry and simply say, 'I like it, I'll take."

So this was not an "intended loss" as probation references.  It does not serve as a proxy for other offense serious factors like state of mind.  To tag Mr. Ali with this amount is wrong because he and any jewelry vendors would be prohibited from selling southwest style jewelry.  There is no such prohibition.

Objection No,11:  P. 21, ¶87:  Mr. Ali denies that there was ever an intent to cheat or deceive V&A Jewelry.  At the time this came about, Mr. Ali was in a partnership with another individual.  Their protocol, at that time, was to purchase product with post-dated checks.  That was the normal practice.  Customers knew this and accepted this.  The business partnership dissolved right around the time of this last transaction.  Mr. Ali was unaware that the check to V&A Jewelry had not cleared for payment.  The January 3, 2005 reference in the second paragraph to the bench warrant for failure to appear for arraignment was due to the notice having been sent to the business which had been closed.  Mr. Ali did not receive the notice.  As further referenced, restitution was made in full and a *Nolle Prosequi* was filed.

/s/ Electronically Signed

JERRY DANIEL HERRERA
Counsel for Defendant Ali
620 Roma Ave., NW
Albuquerque, NM 87102
Telephone: [505] 262.1003
e.Mail: jd@jdherreralaw.com

I hereby certify that this document was
filed electronically using the court's ECF system
which automatically provides copies to
parties of record on this 05th day of March, 2018.

/s/ electronically signed
JD Herrera

3